IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ANZARA BROWN, :
    :
           Petitioner, :
    :
    v. : Civil Action No. 16-70-LPS
    :
DANA METZGER, Warden, and :
ATTORNEY GENERAL OF THE :
STATE OF DELAWARE, :
    :
           Respondents.[1] :

## MEMORANDUM OPINION

Anzara Brown. *Pro se* Petitioner.

Kathryn J. Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

March 25, 2019
Wilmington, Delaware

---

[1]Warden Dana Metzger replaced former Warden David Pierce, an original party to the case. *See* Fed. R. Civ. P. 25(d).

conviction because that sentence should have merged with Petitioner's sentence for his drug dealing conviction. (D.I. 14-14 at 1-7) The case was returned to the Delaware Supreme Court, which affirmed the remainder of Petitioner's convictions and sentence on June 17, 2015. *See Brown v. State*, 117 A.3d 568, 581 (Del. 2015).

In September 2015, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 11 at 3) The Superior Court denied the Rule 61 motion on April 6, 2018. *See Brown*, 2018 WL 1702888, at *10. The Delaware Supreme Court affirmed that judgment on post-conviction appeal in November 2018. *See Brown v. State*, 2018 WL 6181657, at *4 (Del. Nov. 26, 2018).

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

2

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *see also Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show

3

"that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies both to explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner timely filed the § 2254 Petition presently pending before the Court, which asserts grounds for relief: (1) the police violated Petitioner's Fourth and Fourteenth Amendment rights under the Delaware and United States Constitutions by admitting the evidence obtained during a pretextual police stop and search of his vehicle; (2)(a) the State failed to establish a chain of custody for the evidence obtained from the police stop under Delaware law; (b) the admission of that drug evidence violated his Fourth Amendment/due process rights and rendered his trial fundamentally unfair; and (c) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose the misconduct by OCME employees; and (3) the Superior Court violated the Delaware Constitution and the Fourth Amendment of the United States Constitution by granting the wiretap warrant without probable cause.

5

### A. Claims One and Three: Search and Seizure

In Claim One, Petitioner contends that the admission of the evidence obtained from the vehicle stop violated the Delaware Constitution and the Fourth Amendment of the United States Constitution. More specifically, he asserts that that the evidence obtained from his vehicle during a traffic stop should have been suppressed on the basis that the police violated his Fourth Amendment rights by performing the search without probable cause. In Claim Three, Petitioner contends that the Superior Court violated the Delaware Constitution and the Fourth Amendment of the United States Constitution by granting the wiretap warrant without probable cause. For the following reasons, the Court concludes that Claims One and Three do not warrant relief.

First, portions of Claims One and Three assert that the trial court should have suppressed the evidence obtained from the traffic stop and the wiretap because the police did not comply with the Delaware Constitution and 11 Del. C. § 2407(c)(1). These arguments assert errors of Delaware law that are not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, the Court will deny the state law arguments in Claims One and Three for failing to assert a proper basis for federal habeas review.

Claims One and Three also assert that the admission of the evidence obtained during the traffic stop and the wiretap violated Petitioner's Fourth Amendment rights. Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz*, 631

6

F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). However, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.*

In this case, Petitioner filed pre-trial motions to suppress the evidence obtained during the traffic stop and from the wiretap pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure. The Superior Court denied the motions after conducting a hearing. Petitioner then challenged these decisions in his direct appeal to the Delaware Supreme Court, presenting similar, if not identical, arguments to those raised in the instant Petition. The Delaware Supreme Court rejected Petitioner's arguments as meritless and affirmed the Superior Court's judgment.

This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claims in the Delaware state courts. Notably, Petitioner does not (and cannot) allege that a structural defect exists in Delaware's criminal process relating to consideration of search and seizure issues. The fact that Petitioner disagrees with these decisions and/or their reasoning is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Petitioner's Fourth Amendment claims.

### B. Claim Two: Drug Evidence Chain of Custody

Claim Two in the original Petition explicitly asserts the following two arguments: (1) the drug evidence was improperly admitted because the State failed to establish a chain of custody under Delaware law; and (2) the admission of the drug evidence violated Petitioner's Fourth Amendment rights. As part of his second argument, Petitioner contends that the arrest of the receiver at the

7

OCME for theft of drugs and trafficking drugs precluded the State from establishing a chain of custody. Although the original Petition itself does not explicitly assert a *Brady* claim, Petitioner raised a *Brady* claim to the Delaware Supreme Court on direct appeal after remand. (D.I. 14-15 at 12) Additionally, the Petition indicates that Petitioner still had a Rule 61 motion pending before the Delaware Superior Court, but did not indicate the grounds raised therein. (D.I. 3 at 12)

When the State filed its Answer, it addressed the two arguments explicitly asserted in Claim Two, and mentioned the pending Rule 61 motion, but did not otherwise mention the grounds asserted in the Rule 61 motion or that motion's potential effect on this proceeding. Petitioner's Rule 61 motion and post-conviction appeal were ultimately decided in November 2018, while the instant proceeding was still pending before the Court. Upon receiving notice of the Delaware Supreme Court's disposition (D.I. 16; D.I. 17), the Court issued an Order requesting the State to file the records for Petitioner's Rule 61 proceeding (D.I. 18). The Order also provided the State with an opportunity to amend its Answer to Claim Two to the extent its original Answer was affected by the adjudication of Petitioner's Rule 61 motion. (D.I. 18) In its Amended Answer, the State asserts that Petitioner also raises a "claim that the State courts erred in not granting his motion for new trial" based on the systemic problems that existed at the OCME at the time of his trial, which "calls to mind a *Brady* violation." (D.I. 25 at 4, 6) Given these circumstances, the Court construes Claim Two as asserting a third argument, namely, that the State violated *Brady* by failing to provide Petitioner with information about the systemic problems at the OCME. Based on the foregoing, the Court will review all three sub-arguments contained in Claim Two.

### a. Chain of custody under Delaware law

Petitioner contends that the drug evidence was improperly admitted because the State failed to establish a chain of custody under Delaware law. The Court will deny this sub-argument of Claim Two for failing to assert an issue cognizable on federal habeas review.

### b. Chain of custody/due process

Petitioner also contends that the Superior Court's admission of the drug evidence violated his Fourth Amendment rights, because the State failed to establish a chain of custody and prove his guilt beyond a reasonable doubt, due to the discrepancy between the field test drug weight and the OCME drug weight, and also because "the receiver at the OCME office was arrested for theft of drugs and trafficking drugs." (D.I. 3 at 7) Although Petitioner generally cites to the Fourth Amendment, he appears to be arguing that the failure to establish a chain of custody made the drug evidence unreliable and, therefore, the admission of the drug evidence violated due process and rendered his entire trial fundamentally unfair. It appears that Petitioner presented a version of this argument in his Rule 61 motion, and the Superior Court denied it as procedurally barred by Rule 61(i)(3) for failure to raise it in his criminal proceeding. *See Brown*, 2018 WL 1702888, at *7 (Del. Super. Ct Apr. 6, 2018). However, since Petitioner did not present the argument to the Delaware Supreme Court on post-conviction appeal, he did not exhaust state remedies for the instant due process/fundamental unfairness argument.

At this juncture, any attempt by Petitioner to present the due process/fundamental unfairness argument to the Delaware state courts in a new Rule 61 motion would be denied as time-barred under Rule 61(i)(1) and as a successive motion under Rule 61(i)(2). Consequently, the instant argument is technically exhausted but procedurally defaulted, meaning that the Court cannot review

the merits of the argument absent a showing of cause and prejudice, or that a miscarriage of justice would occur if the Court did not review the claim.

Petitioner does not assert, and the Court cannot discern, any cause for his failure to present this argument to the Delaware Supreme Court on direct or post-conviction appeal. In the absence of cause, the Court does not need to address the issue of prejudice. Nevertheless, Petitioner cannot demonstrate prejudice sufficient to excuse his default. As explained by the Delaware Supreme Court in Petitioner's direct appeal,

> [Petitioner] does not contest that the substance seized from him was cocaine; indeed, he requested that a letter he wrote to his attorney be placed on this Court's docket, in which he states, "I never contested that it was not cocaine. I am contesting the fact that drugs has come up missing." In that letter, [Petitioner] asserts that he was arrested with over 29 grams of cocaine, *more* than any of the amounts suggested by Sergeant Skinner, Sergeant Lloyd, Master Corporal Lavere, OCME, or NMS. Even if that was true, all of the tests, and [Petitioner's] own statements, demonstrate that [Petitioner] had more than 20 grams of cocaine when he was arrested. Thus, by any count, [Petitioner] committed a Tier 4 offense, the level for which [he] was charged and convicted. The slight discrepancy among the measurements reported by the police (21.2 grams), OCME (23.23 grams), and NMS (22.05 grams) would not have changed the result, and there was thus no prejudice to [Petitioner].
>
> The alleged lack of professionalism in evidence-handling by employees of OCME, which has been the subject of investigations by the Delaware State Police and Delaware Department of Justice, among others, is deeply troubling, and we in no way want to suggest that this Court does not take the problem seriously. But as we observed in *State v. Ira Brown*, "there is no evidence that the OCME staff 'planted' evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use."
>
> The revelation that OCME employees may have stolen drugs for their own use or were sloppy in handling evidence in certain cases should not result in the issuance of automatic get-out-of-jail-free cards to defendants like [Petitioner]. Instead, we must focus on the specific facts of each case, in light of the appropriate standard of review, to

10

> determine if a defendant was unjustly convicted. No unjust conviction resulted here, because the Superior Court correctly held that there was no rational probability that [Petitioner] was convicted on false premises. The Superior Court properly found that the other evidence of [Petitioner's] guilt—including his own admission that he possessed and intended to sell over 20 grams of cocaine—was overwhelming. Thus, the Superior Court was within its discretion to deny [Petitioner's] motion for a new trial, and we affirm the Superior Court's judgment.

*Brown*, 117 A.3d at 581. This excerpt demonstrates that Petitioner cannot establish that the chain of custody and the OCME issues "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Notably, there is no evidence that the drugs were tampered with, the record reveals that the discrepancies in the drug weights were argued to the jury, and Petitioner himself admitted to police and in conversations captured on the wiretap that he possessed and sold cocaine. The drugs were tested on two occasions in Petitioner's case (a police field test and an OCME test), and re-tested in his former co-defendant's case (Galen Brooks). All three sets of testing indicate that Petitioner had more than twenty grams of cocaine, either in the form of crack or powder cocaine. (D.I. 14-22 at 15) Twenty or more grams of cocaine or a mixture containing cocaine qualifies as a Tier 4 weight. In short, the overwhelming evidence against Petitioner permitted a reasonable juror to find Petitioner guilty of drug dealing.

The miscarriage of justice exception also does not excuse Petitioner's procedural default, because he has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny the due process/fundamental unfairness sub-argument in Claim Two as procedurally barred.

11

### c. *Brady* violation

Finally, Petitioner contends that the Delaware courts erred in not granting his motion for new trial because the State violated *Brady* by not disclosing the information about the systemic problems at the OCME until after his trial.

The following history is relevant to the Court's analysis of the instant argument. In his motion for new trial, Petitioner argued he should be granted a new trial because the State disclosed to him after his trial that the courier of the drugs in his case had been suspended from the OCME for irregularities in handling drug evidence and had also been arrested for trafficking in cocaine. (D.I. 20-5 at 49) Before deciding the motion, the Superior Court judge in Petitioner's case waited until after another Superior Court judge conducted a hearing in another case and made findings about the extent of the problems at the OCME. *See State v. Irwin*, 2014 WL 6734821 (Del. 18, 2014). Based on the findings in *Irwin*, the Superior Court in Petitioner's case concluded that drugs at the OCME were being stolen for personal or other use, but they were not being planted to obtain false convictions. (D.I. 20-5 at 51) In addition, the Superior Court held that the new evidence about the OCME issues would have made no impact on the jury's verdict in Petitioner's case because of the weight of the other evidence presented at trial. The "other evidence" included recordings of Petitioner setting up the drug purchase, as well as Petitioner's *Mirandized* admission to police and his admission in other recorded phone calls that he had cocaine and marijuana on him at the time of his arrest and that he sold cocaine. (D.I. 20-5 at 51-53) The Superior Court denied Petitioner's motion for new trial because the impeaching evidence of the OCME misconduct "was not of a nature that it would have probably changed the result," as the evidence of Petitioner's guilt was "simply overwhelming." (D.I. 14-12 at 4, 7)

12

The case returned to the Delaware Supreme Court on direct appeal. Before Petitioner filed his supplemental opening brief, the State provided Petitioner with retesting results from NMS labs, which confirmed that the substance found on Petitioner was over twenty grams of cocaine. *See Brown*, 117 A.3d at 571-72, 575. Petitioner's appellate counsel filed a no-merit brief under Rule 26(c); one of Petitioner's hand-written arguments in that brief asserted that the State violated *Brady* by failing to disclose the misconduct by the OCME employees. (D.I. 14-15 at 12) The State moved to strike the no-merit brief, and the Delaware Supreme Court granted that motion. (D.I. 14-18 at 4) Petitioner's appellate counsel then filed a supplemental opening appellate brief, which did not assert Petitioner's *Brady* claim. (D.I. 14-20) The Delaware Supreme Court affirmed the Superior Court's decision denying Petitioner's motion for new trial without mentioning *Brady*, holding that the Superior Court properly held the other evidence of Petitioner's guilt was overwhelming. *See Brown*, 117 A.3d at 581.

Petitioner filed a Rule 61 motion, arguing that the State violated *Brady* by failing to turn over the information about the problems at the OCME. *See Brown*, 2018 WL 1702888, at *6. The Superior Court denied the argument as procedurally barred under Delaware Superior Court Rule 61(i)(4) because it was previously adjudicated in Petitioner's direct appeal. *Id.* The Delaware Supreme Court affirmed that decision. *See Brown v. State*, 198 A.3d 176 (Table), 2018 WL 6181657, at *4 (Del. Nov. 26, 2018).

Although a formerly adjudicated claim barred by Rule 61(i)(4) is defaulted for Delaware state court purposes, for the purposes of federal habeas review, the fact that the claim was formerly adjudicated means that it was decided on the merits and should be reviewed under the deferential AEDPA standard contained in § 2244(d)(1). *See Trice v. Pierce*, 2016 WL 2771123, at*4 n.4 (D. Del. May 13, 2016). Consequently, the *Brady* sub-argument in Claim Two will only warrant habeas relief

13

if the Delaware state courts'[2] rejection of the argument was either contrary to, or an unreasonable application of, clearly established federal law.

The Superior Court denied the instant *Brady* claim in Petitioner's Rule 61 motion as procedurally barred under Rule 61(i)(4), but cited to and analyzed the substance of the argument under *Brady*. *See Brown*, 2018 WL 1702888, at *8. Therefore, the Delaware Supreme Court's affirmance of that decision was not contrary to clearly established federal law. Even if the Court should use the Delaware Supreme Court's decision on direct appeal for the § 2254(d)(1) inquiry, rather than the Rule 61 decision, the Court still concludes that the Delaware Supreme Court's appellate decision was not contrary to *Brady*. The Delaware Supreme Court's analysis of the prejudice component of Petitioner's motion for new trial under Rule 33 was analogous to the materiality analysis for a *Brady* violation. *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) (noting favorable evidence "is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different") (internal quotation marks and citations omitted); *Turner v. United States*, 137 S.Ct. 1885, 1893 (2017) (noting petitioners are entitled to new trial for *Brady* violation "only if they establish the prejudice necessary to satisfy the 'materiality' inquiry") (internal quotation marks and citation omitted).

The Court also concludes that the Delaware state courts did not unreasonably apply *Brady* in denying the instant argument. A violation of *Brady* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory

---

[2]The Delaware Supreme Court briefly adjudicated the merits of OCME evidence issue on direct appeal but without referencing *Brady*. Both the Superior Court and Delaware Supreme Court adjudicated the merits of the instant *Brady* Claim in Petitioner's Rule 61 proceeding, and their reasoning provides further insight into the denial of the claim. Therefore, the Court refers to the Delaware state courts as issuing the relevant decisions, rather than the Delaware Supreme Court alone.

14

evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Pursuant to *Brady*, "[p]rosecutors have an affirmative duty 'to disclose [*Brady*] evidence . . . even though there has been no request [for the evidence] by the accused,' which may include evidence known only to police." *Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 284 (3d Cir. 2016). "To comply with *Brady*, prosecutors must 'learn of any favorable evidence known to the others acting on the government's behalf.'" *Id.* In order to prevail on a *Brady* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, "either willfully or inadvertently"; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). A petitioner demonstrates materiality of the suppressed evidence by showing a "reasonable probability of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In turn, "a reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.*

As previously explained, on direct appeal the Delaware Supreme Court rejected Petitioner's argument that a new trial was warranted under Rule 33, for two reasons: (1) the newly discovered evidence of the misconduct at the OCME was not of a nature that it would have probably changed the result of the trial; and (2) the other evidence of Petitioner's guilt was overwhelming. *See Brown*, 117 A.3d at 580-81. Notably, the OCME misconduct did not involve planting evidence in order to obtain wrongful convictions but, rather, involved employees stealing the evidence for resale or personal use. *See Brown*, 117 A.3d at 581. In turn, the other evidence of Petitioner's guilt upon which the Delaware Supreme Court based its decision included: (1) the re-testing of the substance seized from Petitioner, confirming that the substance was cocaine; (2) the total weight of the drugs was 22.08 grams, which was similar to the amount reported by the police officers after Petitioner's

arrest and was more than the 20 gram minimum required for a Tier 4 offense; (3) Petitioner's *Mirandized* admission to possessing approximately 28 grams of cocaine with the intent to sell; (4) the recorded phone calls between Brooks and Petitioner detailing their agreement that Petitioner would purchase drugs at Brooks' residence; and (5) video surveillance that was consistent with the wiretap discussion. *See Brown*, 117 A.3d at 575, 578, 581. After viewing the nature of the OCME misconduct in context with the other overwhelming evidence of Petitioner's guilt, the Court concludes that Petitioner has failed to demonstrate a reasonable probability that the result of his trial would have been different if the State had disclosed OCME misconduct prior to his trial. Accordingly, the Delaware Supreme Court's affirmance of the Superior Court's denial of Petitioner's Rule 33 motion did not constitute an unreasonable application of *Brady*.

Nor did the Delaware state courts unreasonably apply *Brady* when denying Petitioner's Rule 61 motion. As explained by the Superior Court:

> Unfortunately for [Petitioner], there is not a reasonable probability of a different result if the State had complied with its *Brady* obligations due to the overwhelming evidence presented at trial. At trial, the State introduced the recorded phone calls between [Petitioner] and Brooks which detailed an agreement between Brooks and [Petitioner] to engage in a drug transaction at Brooks' residence. The video surveillance admitted into evidence showed, consistent with the last phone call between [Petitioner] and Brooks, [Petitioner] arriving at Brooks' residence and interacting with Mr. Brooks. The surveillance video also showed that approximately five minutes after arriving [Petitioner] left Brooks' residence and then a minute later Brooks left his residence.
>
> Additionally, the State admitted into evidence [Petitioner's] own statement to law enforcement. In this statement, [Petitioner] specifically admitted to possessing an ounce of cocaine and described to law enforcement his intent to re-sell the drugs. Also during his statement, [Petitioner] provided law enforcement his cell phone number which matched the phone number used by the "then unknown male" to arrange a drug transaction with Brooks.

16

> Furthermore, the State introduced into evidence a recorded wiretap phone call between [Petitioner] and Brooks that took place after [Petitioner] was released from custody. During this call, [Petitioner] could be heard describing his arrest and the seizure of the drugs. It is also worth noting that the alleged cocaine recovered from Brown's person was retested by NMS Labs and determined to be cocaine.
>
> It is apparent that there was overwhelming evidence presented at trial. As such it is highly unlikely that the State's disclosure of exculpatory and impeachment information regarding the reliability of the OCME's work product and employees would have changed the result. Thus, this claim has no merit.

*Brown*, 2018 WL 1702888, at *9. This excerpt demonstrates that the Superior Court reasonably applied *Brady* in concluding that the evidence of the OCME misconduct was insufficient to establish the materiality necessary to find a *Brady* violation.

Accordingly, the Court will deny the *Brady* sub-argument in Claim Two for failing to satisfy § 2254(d).

## V. PENDING MOTION

In February 2019, Petitioner filed a Motion to Amend his Petition by adding a claim based on *Adams v. Governor of Delaware*, 914 F.3d 827 (3d Cir. 2019), and Article IV, § 3 of the Delaware Constitution.[3] (D.I. 23) The new claim appears to assert an argument that his conviction is illegal because all the judges in Delaware were appointed unconstitutionally and unconstitutionally engage in policy making. (D.I. 23 at 2) Petitioner filed this Motion after the State had filed its Answer, and the argument constitutes an entirely new claim that does not relate back to Petitioner's original Petition. For these reasons, the Court will deny the Motion to Amend. *See* Fed. R. Civ. P. 15(a), (c); *United States v. Thomas*, 221 F.3d 430, (3d Cir. 2000) ("Under Fed. R. Civ. P. 15(c), an amendment . . .

---

[3]Article IV, § 3 of the Delaware Constitution prohibits any political party to comprise more than a "bare majority" of the seats in the Supreme Court or Superior Court, or in the Supreme Court, Superior Court, and Court of Chancery combined.

17

clarif[ying] or amplif[ying] a claim or theory in the petition may, in the District Court's discretion, relate back to the date of the petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case.").

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VII. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.